UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

DAVID D. WALTMAN,  Case No.: 12-03316-MAM

    Debtor.

## ORDER SUSTAINING OBJECTION TO CONFIRMATION

Russell S. Terry, Attorney for Southern Lease Management Group, LLC, Mobile, Alabama
Frances Hoit Hollinger, Attorney for the Debtor, Mobile, Alabama

This matter is before the Court pursuant to Southern Lease Management Group, LLC's objection to confirmation of the Debtor's proposed Chapter 13 plan. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has authority to enter a final order. Southern Lease Management Group, LLC's objection to confirmation is due to be SUSTAINED.

### FACTS

Debtor David D. Waltman ("Debtor") entered into three separate rental purchase agreements ("the agreements") with Southern Lease Management Group, LLC ("SLMG") in July of 2009. SLMG is a business entity based in Tennessee and the rental purchase agreements contain a choice of law provision mandating that disputes be decided under Tennessee law. The rental purchase agreements state that the property is owned by SLMG and that the lease term is for one month. However, the agreements make provision for the Debtor to renew the agreements for consecutive terms of one month by making rental payments in advance for each additional

1

month. Moreover, the agreements state that if the Debtor makes 36 monthly payments and otherwise complies with the terms of the agreements that the Debtor will acquire ownership of the portable storage buildings. The agreements explicitly state that the Debtor "will not own the property until [the Debtor] has made the number of payments and total of payment necessary to acquire ownership." The agreements set the monthly payment amount; however, in November of 2010, the rental purchase agreements were modified to reduce the Debtor's payment amounts.

At the time he filed bankruptcy, the Debtor had not made the requisite 36 payments. In fact, sometime in early 2011, the Debtor defaulted on his payment obligations to SLMG. SLMG notified the Debtor of the default and instructed the Debtor to take action to cure the default. When the Debtor did not, SLMG mailed a letter to the Debtor on March 31, 2011 explaining that the agreements were terminated for failure to make payments and for failure to cure the default. Thereafter, SLMG filed three separate state court actions seeking possession of the three storage buildings from the Debtor. The three complaints demanded the right to possession of the storage buildings or, in the alternative, requested the monetary value of the storage buildings "as the alternate value of said property."

On July 14, 2011 and July 15, 2011, SLMG obtained three consent judgments against the Debtor for the right to possess the three storage buildings. Each consent judgment awards SLMG possession of the storage building to which it refers *or* the alternate value of the building. Despite the judgments, the Debtor remains in possession of the three storage buildings. The Debtor testified that he uses the three storage buildings for his home and the buildings are currently located in Alabama. On September 25, 2012, the Debtor filed a voluntary Chapter 13 petition. On Schedule D of his bankruptcy petition, the Debtor listed SLMG as a secured creditor holding three separate secured claims against the three storage buildings possessed by the

2

Debtor. The storage buildings were correspondingly listed as personal property of the Debtor on Schedule B. The Debtor did not include any unexpired leases or executory contracts in his schedules. The Debtor proposed a 60 month plan that included payments to SLMG on the three storage buildings as secured collateral. The Debtor's treatment of the storage buildings is the subject of SLMG's objection to confirmation.

LAW

The question in this case is whether the Debtor properly characterized and treated the portable storage units in his Chapter 13 plan. If not, the Debtor's plan cannot be confirmed as proposed. The Debtor treats the portable storage buildings as secured property in his plan and proposes to make payments on the buildings accordingly. SLMG objects to the Debtor's treatment. SLMG argues that the storage buildings were never property of the estate and, therefore, cannot be treated as encumbered property by the Debtor. Instead, SLMG argues that the portable storage buildings are the subject of rental purchase agreements which are executory contracts under applicable state law. This court agrees with SLMG.

Bankruptcy courts look to state law to determine the nature and extent of interests in property. *Butner v. United States*, 440 U.S. 48 (1979); *In re Trusty*, 189 B.R. 977, 981 n.6 (Bankr. N.D. Ala. 1995). The appropriate state law to consider in this case is Tennessee law because the agreements contain a choice of law provision designating Tennessee law as the law governing any disputes arising out of their terms. Alabama courts honor contracting parties' choice of law provisions "so long as the consequences of such provisions are not likely to be contrary to Alabama law or public policy." *Goodwin v. George Fischer Foundry Systems, Inc.*, 769 F.2d 708, 712 (11th Cir. 1985). In this case, the dispositive Tennessee law is consistent with Alabama law, and thus, no contradictions or public policy concerns are present.

3

Under Tennessee law, a "Rental-purchase agreement" is legally distinct from a lease or a simple purchase agreement. Section 47-18-603(7) of the Tennessee Code defines "Rental-purchase agreement" as

> an agreement for the use of personal property by a natural person primarily for personal, family, or household purposes, for an initial period of four (4) months or less (whether or not there is any obligation beyond the initial period) that is automatically renewable with each payment and that permits the consumer to become the owner of the property.

Importantly, § 47-18-603(7)(F) explains that Rental-purchase agreements shall not be construed or governed by "[a] 'security interest' as defined in § 47-1-201."

The bankruptcy court in *In re Osborne*, 170 B.R. 367, 369-70 (Bankr. M.D. Tenn. 1994) applied § 47-18-603(7)(F) to facts similar to the ones currently before this court. In that case, the Osbornes were Chapter 13 debtors who rented a Maytag dryer and refrigerator from King Frog Rentals ("King Frog") pursuant to two "rent-to-own" contracts. The contracts allowed the Osbornes to rent the dryer and refrigerator for an initial period of 8 and 9 days respectively and required the Osbornes to renew the agreement for thirteen consecutive weeks. After that period, the Osbornes could automatically renew the agreement by paying the applicable rental rates. When 52 rental payments were made at the appropriate rate, the Osbornes would own the dryer and refrigerator. The contracts specifically stated that King Frog owned the property until completion of contract.

The Osbornes moved to amend their Chapter 13 plan to add King Frog as a secured creditor. King Frog objected to the treatment of the dryer and refrigerator as secured property. The bankruptcy court determined that the "rent-to-own" contracts were Rental-purchase agreements under § 47-18-603(7). That conclusion dictated that the contracts could not be construed as creating security interests because of § 47-18-603(7)(F). Thus, the court sustained

4

King Frog's objection and held that "[t]he Bankruptcy Code under 11 U.S.C. § 365 pertaining to executory contracts and unexpired leases, and not state law pertaining to security interests, should govern treatment of [the] contracts." *Osborne*, 170 B.R. at 370.

The result here is the same as in *Osborne*. The agreements in this case are "Rental-purchase agreements" under § 47-18-603(7). All of the requirements of § 47-18-603(7) are met: (1) the agreements are for use of personal property, the portable storage buildings, by a natural person, the Debtor, for personal, household purposes; (2) the agreements contain an initial period that is less than 4 months—one month in this case; (3) the agreements are automatically renewable with each monthly payment; and (4) the agreements permit the Debtor to become the owner of the property. As a result, the agreements are executory contracts or unexpired leases which are subject to the rules detailed in 11 U.S.C. § 365 and the agreements cannot be construed as creating security interests because of § 47-18-603(7)(F). Other states have statutes similar to § 47-18-603(7)(F) and courts in those states, including Alabama, have reached the same conclusion when presented with similar facts. *See In re Trusty*, 189 B.R. 977 (Bankr. N.D. Ala. 1995); *In re Porterfield*, 331 B.R. 480, 482 (Bankr. S.D. Fla. 2005); *In re Rembert*, 293 B.R. 664, 667 (Bankr. M.D. Pa. 2003).

A few additional considerations merit discussion. First, the facts do not indicate that the Debtor completed the requirements of the agreements such that he acquired ownership of the portable storage buildings. Therefore, SLMG remains the owner of the buildings and they are not property of the estate. Second, the fact that the Debtor is living in the portable storage buildings does not alter any of this court's conclusions. The Debtor's use, which may or may not be allowed under the terms of the agreements, is immaterial to the proper treatment of the storage buildings in the Debtor's plan pursuant to applicable state law.

Third, the consent judgments did not affect a change in the ownership of the portable storage buildings. Prior to the consent judgments, the Debtor held, at most, a leasehold interest in the buildings. Nothing in the consent judgments altered that fact. The consent judgments merely awarded possession of the buildings to SLMG or, alternatively, their monetary equivalent. The election of remedies provided in the consent judgments was SLMG's alone, not the Debtor's. Moreover, the parties negotiated and consented to the terms detailed in the agreements, including any available remedies. According to those terms, ownership of the properties would only change hands when the Debtor made sufficient payments in number and amount to satisfy the terms of the agreements. The judgments did not alter those negotiated terms.

THEREFORE IT IS ORDERED

1. SLMG's objection to confirmation of the Debtor's Chapter 13 plan is SUSTAINED;
2. Confirmation of the Debtor's Chapter 13 plan is DENIED.

Dated: November 16, 2012

_____
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE